STATE OF VERMONT

SUPERIOR COURT            ENVIRONMENTAL DIVISION
Docket No. 50-6-16 Vtec

---

Diverging Diamond Interchange SW Permit

---

## ENTRY REGARDING MOTION

Count 1, ANR Storm Water Permit (50-6-16 Vtec)

| | |
|---|---|
| Title: | Motion for Reconsideration (Motion 15) |
| Filer: | R.L. Vallee, Inc. |
| Attorney: | Jon T. Anderson |
| Filed Date: | February 23, 2018 |

Response in Opposition filed on 02/28/2018 by Attorney Justin E. Kolber for Appellee Agency of Transportation
       Opposition

**The motion is DENIED.**

R.L. Vallee, Inc. (Vallee) asks the Court to reconsider a portion of its February 8, 2018 decision on the Vermont Agency of Transportation (VTrans) and Natural Resources Board (NRB) motions to dismiss Vallee's questions.

### I.       Standard of Review

As we explained in a recent decision on a separate motion to reconsider filed by Vallee in these matters:

> [W]e may grant [a motion to reconsider] for any of the following reasons: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow a moving party to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; and (4) to respond to an intervening change in the controlling law."

Diverging Diamond Interchange SW and Act 250 Permit, Nos. 50-6-16, 169-12-16 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. Nov. 22, 2017) (Walsh, J.) (quotations and citations omitted).

In considering the underlying motion to dismiss, we "take the factual allegations [of the nonmoving party] as true, and consider whether it appears beyond doubt that there exist no facts or circumstances that would entitle the [nonmoving party] to relief." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1 (citations omitted).[1]

---

[1] Because an appellant in the Environmental Division files a statement of questions, rather than a complaint, we depart from the civil practice of focusing on factual allegations made in the *complaint*, and instead look to factual allegations as made more broadly. See, e.g., R.L. Vallee, Inc., et al. MS4, No. 122-10-16 Vtec, slip op at 1 n.2 (Vt. Super. Ct. Envtl. Div. May 2, 2017) (Walsh, J.).

## II. Procedural History

Vallee's original Question 11 in the Act 250 appeal (169-12-16 Vtec), filed on January 10, 2017, asked whether the proposed project complies with Criterion 10. VTrans and Vallee subsequently filed cross-motions for summary judgment on this question. In their summary judgment pleadings the parties briefed the issue of whether the relevant plans require a sidewalk or multi-use path along the length of Route 2/7. Vallee cited various sections of the Colchester Town Plan and Chittenden County Regional Plan which, it argued, mandate sidewalks or paths.

Upon reviewing these passages and the record before us, we denied both motions. Diverging Diamond Interchange SW and Act 250 Permit, Nos. 50-6-16, 169-12-16 Vtec, slip op. at 30–36 (Vt. Super. Ct. Envtl. Div. Oct. 11, 2017) (Walsh, J.). We concluded that Vallee had failed to identify any part of the Town or Regional Plan that would require sidewalks on the contested section of roadway. We also denied VTrans' motion, noting that there could be other provisions in the 100-page Town Plan or 200-page Regional Plan that might require sidewalks. We also noted that because the scope of Question 11 was so broad, there could be other provisions of the Town or Regional Plan with which the project fails to comply.

Given the broad nature of Question 11, we subsequently ordered Vallee to clarify the question. On December 11, 2017, Vallee submitted its amended and clarified Question 6(a), which asks: "[b]y failing to provide a sidewalk and or multi-use path north of Mountain View Drive does the Project fail to conform to" the Colchester Town Plan, Regional Plan, and other plans and policies under Criterion 10?

On December 29, 2017, VTrans and the NRB moved to dismiss Question 6(a), arguing in part that Vallee had failed to identify the part or parts of the Town or Regional Plans with which the project fails to conform. Vallee opposed the motion, again highlighting parts of the Town Plan which, it argued, mandate sidewalks in certain parts of the project.

In a February 8, 2018 decision, we concluded that Vallee had identified a single mandatory Town Plan provision, but that provision does not apply to the proposed project. Diverging Diamond Interchange SW and Act 250 Permit, Nos. 50-6-16, 169-12-16 Vtec, slip op. at 12–14 (Vt. Super. Ct. Envtl. Div. Feb. 8, 2018) (Walsh, J.). We subsequently dismissed Question 6(a).

## III. Discussion

Vallee asks the Court to reconsider our dismissal of Question 6(a) insofar as it raises the issue of compliance with the Town Plan.[2] Vallee now contends the proposed project fails to conform with another provision of the Town Plan, which reads:

> The Official map delineates future transportation network improvements and other facilities. Developments, road projects, and all other plans shall take into consideration the Official Map and should implement the proposed improvements to the greatest extent possible.

Town Plan at 82.

---

[2] The original Question 6(a), which we dismissed in its entirety, asked whether the project complies with the Town Plan, Regional Plan, and other documents. Vallee now challenges only our dismissal of whether the project complies with the Town Plan, and so we limit our review to that issue.

**a. Whether we look to the zoning regulations to determine if this provision is enforceable.**

Under 10 V.S.A. § 6086(a)(10), the Court must consider any ambiguous Town Plan provisions in light of the zoning ordinances.[3] Vallee appears to argue that if there is ambiguity regarding whether this Town Plan provision is mandatory or advisory, that ambiguity can be resolved by consulting the Colchester zoning ordinance, including the Official Map that is appended to the ordinance.

This is a misapplication of 10 V.S.A. § 6086(a)(10). Determining whether a project conforms with a municipal plan is a two-step inquiry. First, the Court must determine whether language is "mandatory rather than aspirational." In re Twin Pines Hous. Trust & Dismas of Vermont Conditional Use, Nos. 95-7-11, 96-7-11 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. Sep. 20, 2012) (Walsh, J.) (citing In re John J. Flynn Estate & Keystone Dev. Corp., #4C0790-2-EB, slip op. at 27-28 (Vt. Envtl. Bd. May 4, 2004)). If the language is mandatory, the Court then determines whether the provision is specific, or "general in nature or ambiguous." Id. at 12. If the provision is ambiguous, then we can refer to the zoning ordinances to resolve that ambiguity. In re Rivers Dev., LLC, Nos. 7-1-05, 68-3-07 Vtec, slip op. at 9–10 (Vt. Envtl. Ct. Jan. 8, 2008) (Durkin, J.). The zoning ordinances are not considered, however, at the first step to determine whether a Town Plan provision is mandatory or merely advisory.

**b. Whether the language of this provision, considered alone, creates an enforceable provision.**

Vallee next argues that even without considering the zoning ordinances, this section of the Town Plan is mandatory. In making this argument, Vallee proposes that there are two elements that make town plan language enforceable (i.e. mandatory): (1) a mandatory verb, which (2) directs the application of clear standards.

Vallee focuses on the use of "shall" in the provision ("road projects . . . shall take into consideration the Official Map"). Because "shall" "sets forth a requirement rather than a recommendation," In re B & M Realty, LLC, 2016 VT 114, ¶ 35 (Oct. 21, 2016), Vallee submits that the provision requires road projects to at least consider the improvements proposed in the Official Map.

In applying the first step of the two-step inquiry outlined above, we agree that "shall" typically sets out a requirement. When coupled with "take into consideration," however, the provision becomes general in nature or advisory, as opposed to mandatory, because it is not clear what action is required by "take into consideration." Rivers Dev., Nos. 7-1-05, 68-3-07 Vtec, slip op. at 9–10 (Jan. 8, 2008).

Looking to the next clause ("road projects . . . should implement the proposed improvements to the greatest extent possible"), Vallee compares the phrase "to the greatest extent possible" to the use of the word "feasible," which the Environmental Board found to be enforceable in Re: Times & Seasons, LLC and Hubert K. Benoit, No. 3W0839-2-EB, slip op. at 27

---

[3] 10 V.S.A. § 6086(a)(10) reads:

Before granting a permit, the District Commission shall find that the subdivision or development . . . Is in conformance with any duly adopted local or regional plan or capital program under 24 V.S.A. chapter 117. In making this finding, if the District Commission finds applicable provisions of the town plan to be ambiguous, the District Commission, for interpretive purposes, shall consider bylaws, but only to the extent that they implement and are consistent with those provisions, and need not consider any other evidence.

(Vt. Envtl. Bd. Nov. 4, 2005) (in which the town plan stated that: "[w]here feasible, commercial development shall be located within or close to" the village). Vallee fails to note, however, that the Supreme Court subsequently reversed this decision, holding that:

> [T]he provision at issue here is too ambiguous to be enforced against applicant. . . . Even if we give the words "where feasible" their plain and ordinary meaning, it remains uncertain if the drafters of the town plan intended this phrase to refer to economic feasibility, physical feasibility, some combination of both, or perhaps some other measure of feasibility altogether. We agree . . . that such ambiguity and uncertainty renders the words meaningless, and therefore unenforceable under Criterion 10.

In re Times & Seasons, LLC, 2008 VT 7, ¶ 23, 183 Vt. 336.

We find the same deficiency in the phrase "to the greatest extent possible."

Vallee finally points to a line of cases in which provisions using the word "should" were found to be mandatory. See In re Green Peak Estates, 154 Vt. 363, 368–69 (1990); Re: Herbert and Patricia Clark, No. 1R0785-EB, slip op. at 40–41, (Vt. Envtl. Bd. Apr. 3, 1997); Swain Dev. Corp., No. 3W0445-2-EB, slip op. at 37 (Vt. Env. Bd. Aug. 10, 1990). Vallee cites these to argue that the use of "should" in the clause "road projects . . . should implement the proposed improvements to the greatest extent possible" creates an enforceable provision. The cases Vallee cites are distinguishable, however, because they each couple "should" with clear directives regarding what is required or prohibited. The phrase here, especially with the qualifier "to the greatest extent possible," is much less clear. See Times & Seasons, 2008 VT 7, ¶ 23.

We conclude that the language cited by Vallee does not create an enforceable provision. We therefore need not move on to the second step of our two-step analysis.

### c. Whether an alternative Town Plan provision is mandatory.

In our October 11, 2017 decision, we looked at the part of the Town Plan which reads: "[s]idewalks should be implemented as land use plans require. The need for sidewalks is particularly important on roads carrying heavy traffic volumes through developed areas including Exit 16." Town Plan at 82. We concluded that this and other sections are "non-mandatory, because they state general objectives rather than specific requirements. . . These passages therefore do not require VTrans to include sidewalks on any part of the Project." Diverging Diamond Interchange SW and Act 250 Permit, Nos. 50-6-16, 169-12-16 Vtec, slip op. at 1–2 (Vt. Super. Ct. Envtl. Div. Oct 11, 2017) (Walsh, J.) (citing B & M Realty, 2016 VT 114, ¶ 35).

Without explicitly asking the Court to reconsider this ruling, Vallee questions whether we found this provision to be unenforceable because it lacks a mandatory verb, or whether it lacks clear standards.

This passage fails on both counts. With "should," it lacks a mandatory verb. With "as land use plans require," it lacks any clear standard. The passage effectively states that if there is a requirement in the Town or Regional Plan that requires sidewalks, that requirement should be complied with. If such a requirement exists, it might be a standalone enforceable provision. The passage here, however, simply points to such a hypothetical mandatory requirement and does not by itself create an enforceable provision.

**d. Whether Question 6(a) satisfies the basic requirement of notifying the parties and the Court of the issues on appeal**

A Statement of Questions must be specific enough to notify the parties and the Court of the issues on appeal.  In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 14 (Mar. 17, 2017) (citations omitted).  Where a question fails to meet this standard, the Court may order the appellant to clarify the question.  Id.

Here, in attempting to clarify its Criterion 10 question, Vallee failed to identify a single mandatory provision in the Town Plan with which the proposed project might not comply.  This is not for lack of effort—Vallee attempted to identify one or more such provisions in its summary judgment motion and pleadings, in its response to VTrans' and NRB's motions to dismiss Question 6(a), and now in its motion to reconsider.  Without having identified any specific mandatory provisions, all that remains to support Question 6(a) is Vallee's allusion that it might identify one or more mandatory provisions at trial.[4]  This assertion lacks specificity and fails to put the other parties and the Court on notice as to the issues to be litigated.

Despite Vallee's attempts to clarify Question 6(a), we conclude that the question continues to be overly broad and vague.

**IV.  Conclusion**

Vallee has failed to meet any of the grounds that would justify granting a motion to reconsider.  Vallee does not allege a change in law or manifest injustice.  If Vallee intended to present the Town Plan provision discussed above as newly-discovered evidence, that attempt is unavailing because the provision is not mandatory.  Vallee also fails to identify any error of law or fact in our underlying decision on Vtrans' and NRB's motions to dismiss. For these reasons, the motion to reconsider is **DENIED**.

So ordered.

**Electronically signed on March 15, 2018 at 10:37 AM pursuant to V.R.E.F. 7(d).**

_Tom Walsh_
_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division

Notifications:
Jon T. Anderson (ERN 1856), Attorney for Appellant R.L. Vallee, Inc.
Alexander J. LaRosa (ERN 5814), Attorney for party 2 Co-counsel
Justin E. Kolber (ERN 4303), Attorney for Appellee Agency of Transportation

---

[4] Vallee submits in its motion that the Court should not dismiss Question 6(a) because at trial it would draw the Court's attention to "at least one other portion of the Town Plan the Court has not yet considered."

5

David L. Grayck (ERN 4510), Attorney for Interested Person Timberlake Associates, LLP
Elena M. Mihaly (ERN 8101), Attorney for Intervenor Conservation Law Foundation
John K. Dunleavy (ERN 1949), Attorney for party 5 Co-counsel
Gregory J. Boulbol (ERN 1712), Attorney for For Informational Purposes Only Natural Resources Board
Mark G. Hall (ERN 2537), Attorney for Intervenor Costco Wholesale Corp.
Peter J. Gill (ERN 4158), Attorney for For Informational Purposes Only Natural Resources Board
Jenny Ronis (ERN 9185), Attorney for party 5 Co-counsel
Kane H. Smart (ERN 4770), Attorney for party 17 Co-counsel
Hannah W. Smith (ERN 6759), Attorney for Interested Person Agency of Natural Resources